Good morning, your honors. My name is Daniel Johnson. I represent, along with my co-counsel Mark Cody and Toby Marshall, we represent the plaintiff appellants Christy Douglas and Tashika Richard and about 3,300 others who have opted into this FLSA class action. The Fair Labor Standards Act is probably the most basic protection that federal law offers to workers in this country. And one of its principal bedrock purposes is to ensure that workers are paid for all hours worked. Let me just ask you this. You concede that there is no circuit authority in the country for your position. That is correct. I think the best... And that all the circuit decisions are against you. Well, that at most there are two circuit decisions that address the question presented. Okay, you concede there's at least two. Yes, we do. And they're old. Yeah. And at least the businesses in those circuits have relied upon them. I can't answer that for sure, but there is a record of authority against us. There is some compunction not to create a circuit split where none exists. And it seems to me that that's more important the older the circuit cases are that are against you. Why is that not a legitimate consideration for us in this case? And that is leave well enough alone. Do not create a circuit split. The Department of Labor has not gone after the issue. And why is that not a legitimate approach to this case? It certainly is a legitimate consideration. And I appreciate that that is one of the challenges that the court's facing in deciding this case. But it is not enough, is what our position is. And the reason it's not enough is because it's wrong. And the reason it's wrong is because the Fair Labor Standards Act, it actually says that employers must pay employees not less than $7.25 an hour. And when the courts look and say how you measure it. But that doesn't tell you whether you average that by the day or the week. I mean, why even do it by the day? Why not every single minute? You know what I'm saying? All it tells you is you need to get $7.25 per hour. But the statute doesn't answer your question. Well, we think it certainly does, at least partially, because it uses an hourly measure. But accepting the court's skepticism on that, turning to how. Well, it wouldn't make any sense for it to use otherwise because different circumstances require a different amount of hours. So it wouldn't say you're entitled to, you know, $280 a month because, of course, some people work 20 hours and some people work 40 and some people work overtime. Right. So it just, again, I can't quite see how the statute as written does any lifting for you. Well, it may be that we need the interpretive approach, the interpretive rules to get there. And we certainly have those on our side. This is an extraordinarily, the liberal construction mandate in this statute is extraordinarily strong. Well, the liberal construction applies to its applicability, not as to its operation, correct? No. No. The liberal construction is that any time the courts interpret the meaning of any terms in the statute, it should choose, if there are more than, if there is more than one interpretation available, it should choose the interpretation that favors the employees. Where does it say that? I mean, just playing off of Judge Murphy's question, the question is whether it's applicable or not. And we have a lot of cases that say that you tip to the employee and you look to a broad interpretation. Right. But you just made a statement that is about as broad as the kitchen sink. So where is the case I go to that says exactly that, that we would invoke? Well, Biggs v. Wilson is a case from this Court that is cited in our briefs about the work week, the mention of a work week in another provision. And in that case, Judge Reimer quoted from, I believe, Supreme Court cases saying that the statute should be liberally, must be liberally construed to the furthest reaches consistent with Congress's intent to protect employees. And that case was about whether, Biggs v. Wilson was about. That was not an applicability case? No, no. It was about, it was about overtime calculations. It was about overtime. Okay. And the Tennessee Coal case. Let me ask you, Mr. Counsel, if the statute doesn't clearly provide an answer, we tend to look to the agency that has some expertise for guidance. We're aware, of course, there's no regulations, but DOL has, it seems, fairly consistently taken the position that the measurement, that a work week measurement is acceptable. Are you aware of instances other than in Klinghoffer where DOL uses an hourly measurement instead of weekly? I don't think we have explicit authority from the Department of Labor. We certainly have, as you mentioned, Klinghoffer. The Department of Labor has taken that position. So since 1960, you're not aware of any other instance where DOL has deviated from its work week measurement? Well, I wouldn't, but I would say that there are a lot of regulations that the Department of Labor has promulgated that imply an hourly measure for hourly workers. Do you have, which one would you point to that doesn't relate to overtime, that we should look at? The entirety of Section 785 addresses hours worked, and it goes to great lengths to talk about when travel time must be compensable, when waiting time must be compensable, when pre- and post-shift work must be compensable. And all of those suggest that small increments of time must be compensable. Granted, that often raises overtime questions, because when a worker's already worked 40 hours, then it's overtime, but not always. And that's why we're here today. Employees who don't work an overtime week but are giving free labor to the employer ought to have a remedy under this very worker-protective statute. So it is an unusual setup, admittedly, that is a little bit difficult to understand, either the rationale for it or the application of it. So one question I have is, just for talking purposes, even if you were not correct about the hourly calculation as opposed to the weekly, would there still be some kind of contract or implied contract claim that the employees would have as to the nature of their compensation or whether they're entitled to overtime? Well, there might be a contract claim that we haven't pursued vigorously because, frankly, the contract is, you know, it's a take-it-or-leave-it document that is written by the employer to favor the employer. Also, you have a problem with your class if you focus on the contract, don't you? Well, I mean, you know, a document like this really ought to be read the same way for all employees. It shouldn't be every employee has to say what, you know, what they thought at the time. But that's a concern, sure. But I want to go back to this question of this. Wait, let's finish with this. Finish there with this whole, because, I mean, the contract might say what it says, but maybe it doesn't say what's happening. Maybe, I mean, is what's happening at odds with the contract? Yeah, I think it arguably is, but it's not the point. Well, then why not a contract claim? That's why I'm having trouble. You know, I read this thing and I'm trying to, I can imagine, you know, if the three federal judges and all these lawyers are trying to figure out how these people are being paid, why isn't there some potential contract claim? Well, because it's, the contract was written by the employer to favor the employer. And I think one may argue that it's ambiguous as to whether these rates, these complicated rates that are, you know, varying each week according to this or that factor for each employee, whether those rates are, whether the contract is saying those rates apply to all of the time that you're on the clock or not. They certainly say it does not, it says, clearly says it does not. We say, look, that shouldn't matter under the Fair Labor Standards Act. So, but the bottom line is if you get to the end of the week and you add up the number of hours an employee put in, the employees are being paid the equivalent of $7.25 an hour. Is that correct? Or more? Yes. The Xerox employees, yes. They do a true-up after, I think it's every pay period. So they could be making more, but they're making at least $7.25. Yeah. Based on the actual hours that they put in. Right. And what's undisputed is that the earnings that are being, that are you being used in that calculation are earned in some hours and zero is earned in some other hours. And so they have to average it. They have to take pay earned in this hour. Right. But at the end of the day, for all the hours worked, they got $7.25 or more. Yes. And that's why, you know, if a workweek averaging rule applies even to hourly workers, then they have no remedy under the Fair Labor Standards Act for not being paid for some hours. Well, wait a second. What does that mean? If they're not being paid for some hours? Because I thought you said that they are getting $7.25 per hour. Well, I thought your question was at the end of the week, if you redo the math and average it over all the hours. Yes. Yes, that's right. But what I'm saying is the worker is there working and watching her time and doing her tasks, and she is earning money when she picks up the phone and talks to this customer, and she stops earning money when she puts it down. So what they're doing by doing this averaging, because this is an hourly employee, an employee that earns money by the time she works, they're taking that money she earned while she was on the phone and saying, we're going to average that over the time that you're not earning money and make sure that it averages at least $7.25, and then we're good. It's a call it good approach. And you can't do that under a statute that is designed to protect workers and to protect their right to the minimum wage. Well, are you suggesting that the way you measure this, then, is that for every hour throughout a week where there is any unproductive time, that you total up all that unproductive time for the week, and then you multiply it by the $7.25? Is that the approach? Yeah. Okay, here's the problem I'm having. If you say that's the approach, then you're not doing things hour by hour. Well, sure we are. We take the hours worked. No, you're not, because you're bunching them all together at the end, and you're taking a little bit from this hour and a little bit from this hour and a little bit from this hour and bundling them all together and say, this equals total of three hours for the week that are unproductive. They're not paid. And, therefore, you should multiply that by $7.25 and pay them. That's just a practical issue. I mean, no court has ever held that it's incriminating. It may be a practical issue, but here's the problem. Is it by you're doing it in that way, you're committing the very sin that you're saying the defendant is, and that is you're not looking at it hour by hour by hour. You're going to the end of the week and then bundling everything. Well, you know, no, I don't believe so. And I think that it's using this idea of per hour, taking it a little bit further than we intended. I mean, certainly a worker is entitled to be paid for less than an hour of work under the Minimum Wage Act. If he works 45 minutes, he's entitled to be paid for that under the Minimum Wage Act. Well, I understand that. But if I look at an eight-hour day and I see in the first hour that they effectively were paid $9 an hour, even with the unproductive time, then for that hour, they're fully paid. Then I go to the second hour of that day. Well, I guess the answer to that is they don't do that. They don't do that either. They count the times by the minute. Well, no, they do it the other way, the other, you want to call it an extreme. But you're creating yet another, you're just creating a different counting method. Right. No, we're using theirs. We're using their counting method. That's what's in our brief. Okay, but you're using a different period method to compute. It's just different. They're doing it at the end of the week. What happens if the employee quits halfway through the week? So they haven't worked 40 hours. They've worked 20 hours. How does that get calculated? You're asking how they calculate that? Yeah. And how does that fit into your argument? Well, what happens, what our argument is that in any given work day, the employee has to do uncompensable work. They have to get their computer started, and they've got to read announcements, and they've got to wait for a call. Then they take a call, and they start making money. Then they put down the phone, and they've got to do some after-call work, some paperwork for that call, and say, stop making money. And then they've got to pick up another call, and they start making money. Every single one of those activities is tracked by the second, by Xerox. So if it was a 20-hour week, I think it would work exactly the same way as a 40- or 50-hour week. They look back at the pay period. They would get $7.25 an hour at least then. They would add what they call subsidy pay, if necessary, to bring it up to an average of $7.25 an hour. So let me just ask you, sort of when the battle lose the war, let's just say you're right. So then they just change their whole system. I was just saying, what does all this mean? Because if I was Xerox or some other business, and you say, well, we're not going to count that way, then just simply revise how I lay it out. I mean, doesn't it come out the same in the wash, so to speak? Well, I don't know. I think they're probably sophisticated enough to figure out a way to make it come out in the wash in a way that's not illegal, yes. But this is the point. They're telling these agents, who are very low-status workers, they are in a take-it-or-leave-it situation for jobs, and they're telling these workers, we're going to pay you a variable rate per minute for your productive work here. We're going to pay you between $0.19 and $0.23 a minute for this work. And these employees are trying to make as much as they can, obviously. So they're trying to do their calls as fast as they can, stay on the phone as much as they can. The incentive is the opposite of what they would want. You'd shat the ear off the people, right, because that's what you get paid more for, right? But that incentive would not go away if they simply paid. No, I understand that. But you would just rejiggle how you calculate. So that's why I asked the contract question, because when you read all these complicated things about whether you get paid for this and how many cents a minute and all that, you're kind of left with your head spinning. Well, that's right. And, you know, Your Honor, I mean, it may be that that's a claim that we should pursue for these people. But if the Fair Labor Standards Act is read, is interpreted in favor of employees. Let me ask you this, counsel. If you end up not prevailing on the minimum wage provision claim, how does that affect your overtime claim? You know, we have some arguments about how it's really a contract question. It's a contract claim. And I don't think under the minimum, the Fair Labor Standards Act, you know, I think our overtime claim is derivative and dependent upon this minimum wage claim. Just to follow up on that then, were you to not be successful here, is that the end of the line for the claim as pled? Yes. Okay. There's no independent overtime claim. I believe that's correct. Okay. We've let you exceed your time already by a couple of minutes, so we'll hear from Xerox, but I'll give you some rebuttal time. Thank you very much. May it please the Court. My name is Patrick Madden of K&L Gates. Together with Todd Nunn, we represent Xerox Business Services and Livebridge in this matter. Your Honors, before I talk about some reasons why summary judgment should be affirmed, I wanted to note a couple of things in relation to your questions. And Judge Murphy, you focused on the idea that they're trying to jumble all of this together at the end of the work and committing the same sin that they're arguing that Xerox is, and it's exactly right. The key thing in this case is that if you argue that, did you? Yes, Your Honor. We argued, and it's specified in our brief, that they failed to show a single discreet hour where they ever showed that less than 7.25 was paid, if you added up the production minutes in any discreet hour. And so even if you accepted an hourly concept that they argue from Northside, they still lose as a matter of proof on summary judgment. More importantly, if you look at the history of Northside, it's interesting because Judge Gettner Are you saying that's an alternative basis to affirm? Yes, Your Honor. And that alternative basis was preserved below? That alternative basis was preserved below. And Judge, in the Northside case, Judge Gettner issued, found this hour-by-hour approach. And ironically, later in the case, this class was decertified because the court realized that if you had to look at every hour and dissect every hour to figure out whether or not you met minimum wage, you certainly couldn't do that on a class basis. And so there is really no authority to suggest that this should be pursued on a broad basis. And, Judge Murphy, that goes to your other question about the courts of appeals. And there are actually five courts of appeals that have applied the workweek standard, including the Ninth Circuit in the Adair decision. In addition, it's been referenced in a couple of other Ninth Circuit cases. Okay. I understand that. And that was my point. That seems to be a reason to affirm. But if the decision below is just wrong, it doesn't matter how many circuits, if you look at it. And here's the problem I'm having with your approach. You see, Congress knew perfectly well how to say how you measure this, what analysis. In the overtime pay, they said you do it weekly. They knew how to do it, and they chose not to say it on the minimum wage statute. Doesn't that suggest that you don't do it weekly? You do it in some different fashion. I would believe so, Your Honor. And this issue was addressed. Why not? It seems to me that that's a more natural reading of the minimum wage provision when you couple it with the overtime provision. Because the minimum wage provision so clearly talks about hourly as the unit of measurement, and the overtime provision talks about a weekly rate. So when you look at the two together, it seems to me if Congress wanted the weekly rate to be the measuring stick for the minimum wage provision, they could have stuck it in there. Your Honor, you're correct. Congress could have put that in there. You have to go back to the 1940s, the 1930s when this was adopted. And this was all addressed in the early 1940s by a series of U.S. Supreme Court cases. And the U.S. Department of Labor. And in 1940, the U.S. Department of Labor looked at this. And the key thing in the statute when it was adopted is it didn't say per hour. It says at a rate of X amount per hour. Rate is a measuring criteria. Rate is not a statement that you have to pay for a specific hour, but it has to be at a rate. And the U.S. Department of Labor looked at this, and in 1940 issued guidance stating that they believed it could be interpreted in multiple ways, but the statute was designed to guarantee a minimum amount of compensation. In other words, a base amount of earnings not designed to look at each hour. And the department said, well, people normally are paid by the week, and it's reasonable to look at this in terms of are you assuring sufficient base compensation on a workweek basis. But also a fair day's pay for a fair day's work is the other underlying goal. And I'm looking at this ABC plan payment, and it's so complicated. Every time I think I've got it, I've got it now. I understand it. Then the next day I have to look at it over again just to figure out, like, what it's designed to do here. But is it fair to say that at bottom the ABC plan is really an hourly compensation system? And the minute is really just fractions of an hour. I'm trying to think of, you know, a reasonable employee going to work for Xerox, and then you explain I've got this compensation plan, it's called the ABC plan, and it's per minute for this, and then per hour for that. At bottom it just feels like I'm going to be paid per hour, even though it's broken up into fractions of the hour by the minute. How is that wrong? Well, Your Honor, I think that there are a number of reasons why that's not accurate. I would also note even if it was an hourly system, the U.S. Department of Labor has interpreted the minimum wage provisions in this interpretive handbook in 30B02 states that you still apply a workweek standard to an hourly approach. And so the department's longstanding position is you apply workweek even to an hourly system. But it's not hourly for a number of reasons. And to start with, I'd simply note there isn't an hourly rate. There isn't an assigned hourly rate to each hour of work that is set by hour to hour. Instead, the amounts generated in any particular hour are really based on the amount of productivity as well as quality as well as efficiency. And if we did this in terms of the number of sales or the number of calls or something else or the number of apples picked, we wouldn't have these discussions. No, but then we'd be in a piecemeal situation, and this seems to try to shoehorn piecemeal into hourly. Well, Your Honor, I think that's plaintiff's argument, is that somehow Xerox created a production minute. And detailed in the record, a production minute isn't something that Xerox created. It is something recognized in the call center industry as a standard of production, and we put in evidence of that. Right, but it seems to me that you're paid on a salary basis, you're paid on a commission basis, you're paid on a piece rate basis, and then you're paid based on fractions of an hour, which is why this gets closer to the hourly as a measuring stick instead of the weekly. Because the bottom line is going with the weekly approach pays the employee less than going with the hourly approach, right? Going with the weekly approach, as counsel explained, I'm not going to get it right because it's so complicated, but there are some hours that you get zero for, and then other hours can make up for that. No, Your Honor, there are no... The end result is that the dollar amount is less if you go with the weekly rate. Their argument is that there are hours where somebody gets nothing, but there's no evidence of that. There are incremental periods of time during an hour when someone isn't in an on-call status, which is on an incoming call or on hold or doing 30 seconds of follow-up on that call, and those times are, that amount of time does not produce or generate any income. At the same time, there's no evidence of any particular hour that wasn't paid, at least $7.25 an hour. And in fact, the design of the plan, and part of what the court should look at is the fallback. If someone shows up and doesn't work for an entire week, their paid subsidy paid for the week. The plan in the record... They're paid $9.04 per hour in Tysheka Richards' plan for every hour that they work. And so the idea that somehow they're underpaid, plaintiffs admit that Xerox could have simply paid $7.25 an hour to these individuals and complied with the law. Xerox built in a system that allowed them to earn something more. Didn't make them minimum wage workers. Gave them an opportunity to earn something more based on their productivity, based on the quality of their work. And in fact, these two individuals always earned more. Here's the question, because it is a bit of a melange, this program. Is there any evidence in the record, if you had looked at this on an hourly basis, that there would be an employee who was not paid the minimum wage or that would have made more than the employee actually made? There's kind of two questions there. Well, Your Honor, if they were paid on an hourly wage, the question is, what would the hourly wage be? They were guaranteed under the plan, for Tysheka Richards in 2012, for instance, she was guaranteed of getting at least $9.04 for every hour. And the key thing to remember here, and this gets to the question. So you get to the point, though, where's the beef or where's the difference? So my question to your colleague over here was, well, at the end of the day, do they all make money? Do they all make $7.25 or more? And the answer is yes, when you do it by the week. Is there a situation, if you don't do it by the week, you do it under your calculation, that they would not ultimately be paid $7.25 an hour for that hour, or that they would actually make less than you had promised them? I'm not sure if I'm tracking the question, but I'll try. But the problem is because it's so complicated, nobody can figure out what it is. But they haven't shown us either where somebody's being underpaid. So that's where I'm having a problem, like, where does this matter? Well, Your Honor, I would say on summary judgment, they have the burden of proof to establish a wage claim. We've demonstrated, put in evidence that people were paid above the minimum wage. They have not, and even without any evidence, they have the obligation to come in with at least one hour where someone wasn't paid at least $7.25. And there's no evidence in the record of anyone who was not paid, of these two individuals, ever being, having a discrete hour. So could there be parts of an hour where they were cooling their heels, so to speak, waiting for a call, and off a call, where they're not compensated, and therefore for that hour, even though normally they would make 9, what is it, $9.04 an hour, that they wouldn't make $7.25 for that hour? If you were to analyze minute by minute... Or hour by hour. Right, for any particular hour, that could happen, but there's no evidence of that. Well, but wait a minute. If you're sitting at your desk, it is seven hours I'm on the phone continuously, the last hour I'm spending cleaning up my desk, and it's all nonproductive time. As long as at the end of the week I got paid $7.25 for all average hours, that last hour, if you look at it by the hour, I was paid nothing. But it's okay, because at the end of the week I got $7.25 on the average. Isn't that... If there was evidence of that hour, there's no evidence that they sat for an hour and did nothing. Well, no, but we're talking about a complicated plan that could have all kinds of different hypotheticals of what happens. And what I want to know is the hypothetical I set out, even though it may not be in the record, that could happen. If this was on a 12B6, under hypothetically that could happen, but this is on summary judgment. So you're saying that they haven't shown us any hours or minutes where that ends up being the case? They have not shown an hour where there were so many unpaid minutes that the hour would fall below $7.25 an hour. And, Your Honors, I did want to briefly address this idea that it's a complicated plan, because I know it's complicated when you don't work in the industry. No, but you had your chance in doing it in writing. Why should your averaging be correct? Now, as I understand it, what you're saying that there is no ambiguity in the statute, that the statute is clear, that any way you calculate it, where at the end of a week, if they were paid at least $7.25, Xerox wins. Based on the holdings of five courts of appeals, based on the U.S. Supreme Court in Rosenthal. My point is, if you wanted to look at it hourly or weekly, as long as they get the $7.25 at the end of the day, it doesn't matter how you measure it. Because that's the purpose of the FLSA minimum wage requirement. I want a yes or no. I believe that based on the interpretation of the statute historically, there is no ambiguity in the law today. When we're talking about ambiguity, we're not talking about any gloss that's put on by any interpretive decision. We're looking at the statute on its face, and we've heard plain meaning over and over. Under the plain meaning of the statute, are you saying that there is no ambiguity, that you can measure it any way you want to? I believe by stating at a rate, Congress left it open to determine how the rate was determined, which is not specifying that it has to be at an hour. Now, is that ambiguous? I'm interpreting that to mean that you're saying there is no ambiguity. I believe that's not ambiguous. Okay. That's all I want to know. And so, and you don't, this is not a piece rate case in your view? No. I think it's clear in the record the company designed this thinking that it was a piece rate, and it should be treated as a piece rate. Judge Kuhnauer disagreed, but they viewed the production minute as a unit of work. That's what Xerox was paid for by Verizon. Verizon paid for the number of production minutes that were produced. And so it's 70, 778, 318 then is applicable in your view, because it's a piece rate. Section 318 talks about other compensation. The first part of that provision isn't limited to piece rate. The example below is a piece rate plan, but I believe Section 318C applies regardless of the form of compensation. I would also note Mr. Johnson noted that there are other people involved in this case. The other people in this case, we put in the other plans. It's production minute for these particular individuals. That's why they picked them, I think. But there are other plans that cover calls and documents and faxes and hearings and all sorts of other things that aren't measured by time that all plug into the same plan. Are they part of the class? Yes. But not these two individuals. And so the design of the plan is to be an incentive piece rate plan. Although there is a disincentive to keep people on the phone longer. The longer you keep them on the phone, the more you're going to make. Correct. Which means you want them to produce more, which is exactly what an incentive plan is supposed to be. Or keep the customer talking. Customer talking, because then you get paid more. Well, no. See, this is why it's, this is the key part of the plan on which the plaintiffs understood, Taishik Richards understood, there are three components. There's a quality component. That's, are the people happy? And they're surveyed for that. The second component is the efficiency component. And they had a targeted amount of time that they were supposed to be on calls. If they were under 485 seconds, that got them a higher rate than if they went over 485 seconds. Because they didn't want them on a phone call for 30 minutes or an hour. Because customers then are unhappy. So, and this is specified in the Verizon contract again. Verizon specified how long they want. So the ideal call is about eight minutes. And if they go beyond that, then their rate drops. And so there are three, there are different incentives here. You want to make customers happy. You want to make sure that you don't make the calls too long. And you want to be on as many incoming calls as possible. Okay, now you say this is not complicated. So what you're telling me now, something I understand, is even on a single telephone call, while you have them on the line, there's a different hourly rate applicable. There's an hourly rate for the first eight minutes and a different one for the next eight minutes. No, no, Your Honor. Okay. No, it's, it's, they do assessments and that varies retroactively. What you do is you look at how many, the average handle time is, the average amount of time you spend on calls. And if it stays below 485 seconds in one period, then you will get paid a certain rate that may be different than if it goes above. And it's done by work weeks rather than by hour or by call. But it's a multifaceted calculation of what they earn. And it looks at quality and that's the efficiency component. And then the productivity is are you on taking incoming calls. Thank you. Thank you, Your Honor. I'll give you two minutes for rebuttal. Maybe you could address first the issue he raised, which is that in his view, no matter how you slice it, these two plaintiffs have shown no situation where even if you do it the way you'd like to do it, they were underpaid. So maybe you can show us where in the record we would look to either support your view or his view. Well, yeah. In our opening brief, pages 9 to 10, we outlined exactly how the two plaintiffs pay during a given work week ended up having unpaid hours. And those are actual hours and times that they worked? Yes. Or is that a hypothetical work week? No, these are from the record. And you just took their pay stub and then substituted the more representative? Well, we took the complicated records that they have behind the scenes, which show you exactly how many minutes were deemed productive and compensated at what rate and how many minutes were on the clock and not paid. So it's all right there. And, you know, this idea that, I mean, no court has ever said that an employee has to prove a discrete hour that occurred between 8.15 and 9.15 in order to make a case for a minimum wage claim. No court's ever said that. We have shown right here unpaid time. I mean, the Tennessee cold case where I think we should start. It all comes down to when, in what increment you aggregate that time. Well, yeah, but there's no question in the law that, you know, seconds, certainly minutes. You know, we have the de minimis rule under the FLSA, which is deemed to be about eight or so minutes. Anything over that is compensable work time. So this is not, this is a. . . claim? No. It goes back to what Judge McKeown and Judge Murphy were talking about earlier in terms of this being a contract, potential contract violation. Yeah, but again, we're still looking at this document that you all agree is completely a mess. I mean, it's got all these varying rates and all these, you know, unclear ways that they're going to apply the rates to what time. I mean, it says these rates are going to apply to all of your work time, and yet they don't. They don't apply to all work time. And we, I mean, the claim before your honors is definitely only this minimum wage claim. And the basis for it is that it is an hourly plan and they don't pay for all hours worked. Why does it have to be that the statute says you measure it one way or another? Well, that's right. Why can't the statute be that, you know, it's different ways of measuring different things? That's right. And if you measure it weekly, this looks okay. No, it can't just be, there has to be some measuring rod. But the point is we're not advocating a single monolithic measuring rod. We're saying hourly workers earn the right to minimum wage on an hourly basis. In ADARE, you have people paid by a weekly salary. We don't contend that ADARE was decided wrong. Those people can't have the minimum wage decided on an hourly basis. They're paid by the week. The same with piece rate workers. You know, if you're paid solely by the piece work and you're engaged in piece work, you can't measure that work on an hourly basis. But when you're an hourly employee, you certainly should, under this statute, measure the right to minimum wage. They claim it's not really an hourly-based. Right. So then you're back to something that's even less complicated than the statute, and that is what is this plan? Right. And, you know, that was litigated in this case to some degree. Judge Kuhnhauer didn't really say clearly. He said it's not a piece rate plan. He said it's not a salary. In the companion case under state law, the Hill v. Xerox case that is pending before another panel here, he did say this is an hourly pay plan. It's the same plan, the same employer. All right. Thank you. Thank you. Well, you've certainly presented us with a puzzle from both sides. We appreciate the briefing and the argument. The case just argued of Douglas and Richard v. Xerox is now submitted and we're adjourned for the morning. Thank you to all.
judges: Murphy, McKeown, Nguyen